UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOSEPH ANTHONY GRAZIOLA, III,

Defendant.

CRIMINAL NO. 09-350 (DWF/JSM)

REPORT AND
RECOMMENDATION

JANIE S. MAYERON, United States Magistrate Judge

The above matter came on before the undersigned upon defendant Joseph Anthony Graziola, III's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 12] and Pretrial Motion to Suppress Evidence [Docket No. 14].

Leshia M. Lee-Dixon, Assistant United States Attorney, appeared on behalf of the United States of America; Lyonel Norris, Assistant Federal Public Defender, appeared on behalf of defendant Joseph Anthony Graziola, III, who was personally present.

The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

Based upon the pleadings and the pre-hearing submissions, it is recommended that defendant Joseph Anthony Graziola, III's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 12] and Pretrial Motion to Suppress Evidence [Docket No. 14] be denied.

I.  **BACKGROUND**

Defendant is charged with thirty-six counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 1342.  See Indictment [Docket No. 1].

Defendant has challenged the search and seizure of computers, imaged hard drives, and a thumb drive seized on January 19, 2006 during a search warrant at defendant's residence in West Chester, Pennsylvania.[1]  The parties have agreed that defendant's motion can be resolved based on the four corners of the warrant and application.  As such, the sole issue presented to the Court is whether probable cause existed on the face of the search warrant application to support the issuance of the warrant.

Ordinarily, searches pursuant to a warrant are reviewed to determine if there was probable cause for the search in the search warrant application and affidavit.  Illinois v. Gates, 462 U.S. 213, 236 (1983).  "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place."  United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000).

---

[1] At the hearing on the motions, the Court inquired as to the basis of defendant's challenge to the warrant for the computers, hard drives and thumb drive.  Counsel for defendant stated that "I simply want another pair of eyes to look to see that it satisfies our notions of what is appropriate in the issuance of a search warrant.  My understanding is that the search warrant was issued not out of this district.  It was issued in Pennsylvania.  I'm not familiar with that court or their practices.  I've reviewed it.  It seems satisfactory to me.  But I'm not absolutely certain it would comport with the court here."  When the Court asked if, during his own examination of the search warrant, defense counsel had found anything missing, or anything that did not comport with what was required for probable cause in a search warrant, counsel responded that he had not.

The task of a court issuing a search warrant is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit… including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. In reviewing this decision of the issuing court, the duty of the reviewing court is simply to ensure that the court had a substantial basis for concluding that probable cause existed. Id. at 238-39 (citation omitted); see also United States v. LaMorie, 100 F.3d 547, 552 (8th Cir. 1996) (citation omitted) ("Our duty as the reviewing court is to ensure that the issuing judge had a 'substantial basis' for concluding that probable cause existed, and we owe substantial deference to the determination of probable cause by the issuing judge."). As to what this Court should consider when reviewing a search warrant for probable cause, "[w]hen the [issuing judge] relied solely on the affidavit presented to him, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (citing United States v Etheridge, 165 F.3d 655, 656 (8th Cir. 1999), quoting United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995)).

Postal Inspector Kathryn Nichols of the United States Postal Inspection Service applied for the warrant to search computers, imaged hard drives, and a thumb drive seized January 19, 2006 during a search executed pursuant to warrant at defendant's residence. The warrant was signed by United States Magistrate Judge Theresa Carroll Buchanan of the Eastern District of Virginia on March 13, 2006, and executed on March

3

15, 2006. The warrant sought to search computers, imaged hard drives and a thumb drive for the following:

> Records and documents maintained or stored on a computer, computer disk, or thumb drive that refer or relate to American Same Day Service, Inc./American Same Day Service/American Same Day/ASDS, Best Buy, Kinko's, Williams & Associates/W&A including, but not limited to:
>
> a. correspondence
>
> b. statements
>
> c. bills of lading
>
> d. invoices
>
> e. receipts
>
> f. check stubs
>
> g. letterhead
>
> h. form templates
>
> i. facsimile transmissions
>
> J. personal financial statements
>
> k. banking records for Joseph A. Graziola III
>
> l. e-mail traffic and online records/communications
>
> m. customer account records
>
> n. vendor records
>
> o. sales ledgers
>
> p. training manuals
>
> q. employee records
>
> r. expense records
>
> s. accounts payable records

    t. accounts receivable records

    u. mailing records

Gov't Ex. 1.

  The relevant verbatim portions of the Affidavit accompanying the search warrant described the basis for the warrant as follows:

- Your affiant knows that on or about December of 2005, representatives of Best Buy Corporation contacted the Minneapolis office of the Federal Bureau of Investigation (FBI) regarding fraudulent invoices their company had received from a delivery/courier freight service named American Same Day Service Inc., aka American Same Day Service, aka American Same Day, aka ASDS. From information provided by Best Buy representatives, your affiant determined that Best Buy's relationship with ASDS began in June of 2003 and ended in January of 2004. According to Matt Storlie, Senior Data Analyst, Best Buy received approximately 213 invoices from ASDS totaling $975,000 between June, 2003 and December, 2005. After reviewing the invoices, Storlie believes that 38 of those were legitimate and were received and processed prior to January, 2004. The legitimate invoices totaled approximately $65,000.

- Your affiant was informed that after Best Buy's relationship with ASDS had ended in January of 2004, ASDS ceased sending invoices for a period of time. Best Buy began to receive invoices again from ASDS in April of 2004, although ASDS no longer provided any services to Best Buy. Invoices dated April, 2004 through December, 2005, were compared and found to be the same as invoices received prior to this time period. The invoices from April, 2004 to late 2004 used sales order numbers from invoices received prior to January, 2004. It was observed that the name at the bottom of the invoices and the sales order number had been omitted from the invoices starting in late 2004 until the present. Best Buy believes the invoices dated from April, 2004 to the present were recycled from previous invoices and are for services that were never rendered. As a result, Best Buy has paid roughly $910,000 to ASDS for the approximately 175 fraudulent invoices received during this year long period. Your affiant was also informed that ASDS was a "non-preferred" vendor and as such, Best Buy did not have a standing contract with their company.

5

- In addition, your affiant learned from Storlie, that in February, 2004, an invoice marked past due was received from ASDS, dating back to November, 2003. Upon further review, Storlie noted that the original invoice had been paid on time and was paid a second time after the past due notice was received.

- In January of 2006, your affiant learned from Best Buy representatives that Williams & Associates (W&A) is used as a freight payment vendor to pay invoices received by Best Buy from various companies. It was confirmed through Best Buy representatives that ASDS sends the fraudulent invoices directly to Best Buy where they are opened, coded and passed on to W&A for payment. Your affiant has learned from Ron Williams of W&A that the invoices from ASDS are paid approximately on a weekly basis without being audited per W&A's agreement with Best Buy. Best Buy wires money directly to W&A. W&A then cuts the checks and mails them directly to ASDS at PO Box 51, Glenolden, PA 19036.

- The ASDS invoices list a remittance address of "American Same Day Service Inc. PO Box 51 Glenolden, PA 19036." A review of postal records in January of 2006 indicated that Post Office Box 51 is rented to a Joseph A. Graziola III with American Same Day Service also listed to receive mail there. Your affiant knows that on at least two occasions since October of 2005, mail from W&A has been received at PO Box 51 in the name of American Same Day Service. On January 5th, 2006, a search for ASDS was conducted with the Pennsylvania Department of State which revealed that ASDS was incorporated under the laws of Pennsylvania on October 4th, 2002. Records indicate that American Same Day Service is in active status and that Joseph A Graziola III is the registered owner.

- In January of 2006, your affiant learned that Thomas Murphy, a Philadelphia Postal Inspector, was also investigating Joseph A. Graziola III and PO Box 51 for unrelated fraudulent activity. Through his investigation, Inspector Murphy determined that Joseph A Graziola III was residing with his girlfriend, Lori Parkhurst, in a town home located at 100 Chaps Lane; West Chester, PA 19382.

- After developing probable cause to believe evidence of fraudulent activity was contained at the residence of 100 Chaps Lane, West Chester, PA 19382, Inspector Murphy applied for and obtained a federal search warrant for the residence. It was executed on January 19th, 2006.

- In conjunction with the search warrant, Inspector Murphy conducted an interview of Joseph A. Graziola III on January 19th, 2006. During the interview, Graziola admitted that he had opened ASDS in 2002 and at first informed Inspector Murphy that it was a "dormant" company and had been for approximately one year. At a later point in the interview, Graziola corrected himself and stated that he still had a couple of clients, including Best Buy and Kinko's.

- During execution of the search warrant, a safe was discovered which contained approximately eight ASDS invoices to Best Buy. The invoices appeared to be computer generated, and, as ASDS related items were not listed as items to be seized, they were left at the residence. Six computers were found, five of which were imaged at the residence and one of which was physically seized, in addition to a thumb drive, all seized for further examination.

- In February of 2006, Inspector Murphy sent the seized computers/imaged hard drives/thumb drive to the Postal Inspection Service Forensic Laboratory in Dulles, Virginia for analysis. The laboratory is located in the eastern district of Virginia, which is where the seized computers/imaged hard drives/thumb drive are currently and will remain while undergoing forensic examination.

- Your affiant believes that Joseph A. Graziola III has used his computer system to facilitate the scheme of fraudulently invoicing Best Buy and possibly Kinko's. It is likely that computers/imaged hard drives/thumb drive recovered during the search of his residence on January 19th, 2006 contain computer generated invoices to those companies and other possible instrumentalities, fruits or evidence of criminal activity.

- Based on my training and experience and consultation with other agents, it is not unusual for individuals involved in fraud schemes to maintain in their residences and/or on their computers records related to their fraudulent activities for several years after the discontinuance of the fraud scheme. White collar crime investigators routinely discover records and documents in residences numerous years after the scheme has ended.

- Your affiant knows that computer hardware, software, documentation, passwords, and data security devices may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence or crime, and/or (2) the objects may have been used to collect and store information about crimes (in the form of electronic data).

Gov't Ex. 1.

## II. DISCUSSION

The Court finds that the warrant application contains sufficient information from which a reasonable person could conclude that there was evidence of a crime located on the computers, hard drives and thumb drive. American Same Day Service ("ASDS") was being investigated for submitting fraudulent invoices to Best Buy, and defendant was the registered owner of the company. During the execution of a search warrant for unrelated fraudulent activity, investigators discovered approximately eight ASDS invoices to Best Buy that appeared to be computer-generated. Six computers were also found at the residence, along with a thumb drive. Defendant was interviewed in conjunction with the execution of that warrant, and admitted that he opened ASDS and that Best Buy was still a client. Based upon the affiant's experience, individuals involved in fraud schemes maintain computer records related to the fraudulent activities for several years after the discontinuance of the fraud scheme, and computer hardware may be used to collect and store information about crimes in the form of electronic data.

Based upon the totality of the circumstances, the Court finds that substantial evidence existed to support the finding of probable cause to issue the search warrant for the computer, imaged hard drives and thumb drive.

## III. RECOMMENDATION

For the reasons set forth above, it is recommended that defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 12] be DENIED and Pretrial Motion to Suppress Evidence [Docket No. 14] be DENIED.

Dated: April 13, 2010

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **April 27, 2010**, a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.